Abraham M. Sonnabend and Esther L. Sonnabend v. Commissioner.
Sonnabend v. Commissioner
Docket No. 61966.
United States Tax Court
T.C. Memo 1958-178; 1958 Tax Ct. Memo LEXIS 46; 17 T.C.M. (CCH) 882; T.C.M. (RIA) 58178; September 26, 1958
*46 Deductions: Interest. - Transaction wherein petitioner purported to purchase $11,000,000 face amount of U.S. Treasury notes, giving his note for all but $16,500 of the purchase price, held, lacking in substance and insufficient to create indebtedness. Respondent's disallowance of claimed interest deductions approved. Eli D. Goodstein, 30 T.C. - (August 28, 1958), followed. John P. Allison, Esq., 521 Fifth Avenue, New York, N. Y., and Sandow Holman, Esq., for the petitioners. John M. Doukas, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the fiscal years ended August 31, 1952 and 1953 in the respective amounts of $92,952.09 and $63,158.64. The petitioners allege that the respondent erred in disallowing claimed deductions for interest paid to Cushing Investment Corporation in the amounts of $184,729.63 and $100,000 in the fiscal years 1952 and 1953, respectively, in connection with the purchase of U.S. Treasury notes, the interest on which is fully taxable. They alternatively allege error in the respondent's failure to allow the sum of $15,868.03 as a loss deduction *47 in the fiscal year 1952 and in failing to exclude from income for the fiscal year 1953 the amount of $137,201.09, representing interest on U.S. Treasury notes. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. The petitioners are husband and wife, and reside in Brookline, Massachusetts. Their joint income tax returns for the fiscal years ended August 31, 1952 and 1953, herein called fiscal years 1952 and 1953, were filed with the director of internal revenue at Boston, Massachusetts. The returns were prepared on the cash method of accounting. Except where otherwise indicated the term petitioner is used herein to refer to Abraham M. Sonnabend. The petitioner for many years has been a corporation executive. At the time of the hearing he was president of two corporations. In the taxable years he was not a dealer in securities, although he had previously purchased bonds in which transactions he had borrowed a substantial part of the purchase price. For about 15 years prior to the hearing the petitioner had been acquainted with, and had been a customer of, M. Eli Livingstone, who was engaged in business in Boston as a broker and dealer *48 in securities under the name of Livingstone & Company (hereinafter called Livingstone). In the early part of May 1952 the petitioner had a meeting with Livingstone at which Livingstone advised the petitioner that U.S. Treasury 1-1/2 per cent notes, due March 15, 1955, were then selling below par and that banks and other lending organizations would make liberal loans against them. Livingstone stated that there was a good chance for such notes to substantially appreciate in price prior to maturity. These Treasury notes carried interst coupons which matured every six months, in March and September, and such interest was not exempt from Federal income tax. The petitioner learned that Livingstone would require a payment by him of $16,500 in connection with an order for $11,000,000 face value of such Treasury notes. Thereafter the petitioner entered into a transaction, the detailed steps of which were in the form hereinafter described. On May 15, 1952, the petitioner gave Livingstone an order to purchase for him $11,000,000 face amount of U.S. Treasury 1-1/2 per cent notes maturing March 15, 1955. Livingstone placed an order with C. J. Devine & Co. (herein called Devine), bond dealers, *49 for the purchase of that amount of such Treasury notes. Livingstone purchased such amount of Treasury notes at 99-1/64, a principal sum of $10,891,718.75, which, together with interest accrued in the amount of $27,798.91, resulted in a total purchase price of $10,919,517.66. These amounts were set out in a confirmation slip furnished by Devine to Livingstone and one by Livingstone to the petitioner, the latter showing the purchase by Livingstone as agent for petitioner. Neither confirmation slip shows any commission charged. The Treasury notes were not delivered to either Livingstone or the petitioner. Acting on letter instructions from Livingstone dated May 15, 1952, Devine delivered the Treasury notes to Guaranty Trust Company of New York. On May 15, 1952, Devine sent Livingstone invoices covering the purchase of the Treasury notes, listing the serial numbers, [1] and advising that they had been delivered to Guaranty Trust Company for Livingstone's account against payment, and acknowledging payment. On receipt of the Treasury notes on May 16, Guaranty Trust Company on the same date charged Livingstone's account with the purchase price of the Treasury notes, $10,919,517.66, and credited *50 Devine's account with a like amount. The function of Guaranty Trust Company in the transaction was to clear the securities according to instructions of Livingstone, who had an account with the bank. On May 16, 1952, the petitioner executed and delivered to Cushing Investment Corporation, of Boston, herein called Cushing, his promissory note in the sum of $10,903,017.66 payable on December 31, 1952, with interest at the rate of 2-1/4 per cent per annum. The note recited that the petitioner had deposited as collateral $11,000,000 U.S. Treasury 1-1/2 per cent notes due March 15, 1955. The note contained the following provisions: "The undersigned gives to the obligee a lien against the securities pledged for the amount of the obligation set forth herein, and gives to the obligee the right to hypothecate and use the securities pledged for any purpose while so pledged. "The undersigned shall have the right to order the immediate sale or liquidation of the securities pledged at any time, whether at the maturity date or otherwise, and shall have the right *51 to have the proceeds, realized from such sale or liquidation, applied to discharge the entire indebtedness of the undersigned. At the time of such sale or liquidation interest under this instrument shall cease." The transaction was recorded by Cushing on its books under date of May 15, 1952, by an entry showing a loan receivable from the petitioner in the amount of $10,903,017.66 and a corresponding liability to Livingstone in the same amount. The petitioner instructed Livingstone to deliver to Cushing the $11,000,000 Treasury notes purchased from Devine on May 15th, as collateral for his note held by Cushing. Livingstone did not make delivery to Cushing. On May 16, 1952, Cushing sold short to Devine through Livingstone $11,000,000 face amount of Treasury 1-1/2 per cent notes of March 15, 1955, at a price not disclosed by the record. To effect delivery Guaranty Trust Company redelivered to Devine the $11,000,000 Treasury notes which had been purchased earlier on the same day. The redelivery took place within a half hour, or at the most an hour, after their receipt from Devine. The petitioner had no knowledge of, or part in, the making of the short sale by Cushing on May 16, 1952, of *52 $11,000,000 face amount of U.S. Treasury notes of March 15, 1955. On May 22, 1952, the petitioner issued his check to the order of Livingstone in the amount of $16,500. That amount plus the amount of his note to Cushing equalled the $10,919,517.66 purchase price of the Treasury notes purchased by Livingstone from Devine on May 15, 1952. On June 26, 1952, the petitioner issued his check payable to Cushing in the amount of $184,729.63. The check was certified on July 3, and was cashed by the drawee bank on July 7, 1952. The amount of the check was credited by Cushing to its interest received account on July 3, 1952. On the same date, July 3, 1952, Cushing paid to the petitioner the sum of $184,750 which was charged on Cushing's books to loans receivable and credited to cash disbursements. The petitioner gave Cushing his note for that sum. By letter of December 26, 1952, from Cushing to the petitioner, the time for payment of the petitioner's notes in the amounts of $10,903.017.66 and $184,750 was extended to March 15, 1955. On August 31, 1953, the petitioner issued his check to Cushing in the amount of $100,000. The check was cashed by the drawee bank on September 2, 1953. The *53 amount of the check was credited by Cushing on its records to interest income under date of August 31, 1953. On September 2, 1953, Cushing paid to the petitioner by check the sum of $100,000 which was entered on Cushing's records as a charge to loans receivable and a credit to cash account. The petitioner gave Cushing his note for that sum. The petitioner's accountants prepared personal balance sheets for the petitioner as of August 31, 1952 and 1953, which were furnished to banks for credit purposes. In the 1952 balance sheet there was listed as an asset U.S. Government bonds in the amount of $10,891,718.75 with an explanatory notation that they were pledged to secure notes to Cushing. Among the liabilities there was listed an item of notes payable to Cushing in the amount of $11,087,767.66 [2] with a notation that it was secured by U.S. Government bonds. The 1953 balance sheet listed as an asset U.S. Government bonds in the same amount and with the same notation as in the prior year. It listed notes payable to Cushing in the amount of $10,922,767.66. [3]
*54 Interest coupons on U.S. Treasury 1 1/2 per cent notes of March 15, 1955, matured on September 15, 1952 and March 15, 1953. The amount of such interest on $11,000,000 face amount of notes on those two dates aggregated $165,000. The cash receipts records of Cushing do not record any actual receipt of such interest. Nor do the records show any concurrent crediting of such amounts to the petitioner. However, such amount was at some time credited by Cushing against the principal of the petitioner's notes. By letter dated August 23, 1954, the petitioner directed Cushing to deliver to Livingstone from his account $11,000,000 of Treasury notes "against payment of $11,140,305.53 and apply the proceeds to discharge my loan with you." By letter of the same date he directed Livingstone to receive the Treasury notes from Cushing against payment to Cushing of $11,140,305.53 "and remit the balance of $631.97 to me." [4] The record contains no evidence of any purchase of Treasury notes by Cushing, any transfer of Treasury notes from Cushing to Livingstone or any sale thereof by Livingstone, on or about August 23, 1954, other than certain entries on the books of Cushing. The records of Cushing *55 under date of August 23, 1954, contain: "(a) a debit to Livingstone account, $11,140,937.50 "(b) a debit to interest account, $47,462.13 "(c) a credit to accounts receivable (Livingstone), $631.97, and "(d) a credit to notes receivable (A. M. Sonnabend), $11,187,767.66" [5]
*56 In his income tax return for the fiscal year 1954 the petitioner reported the approximate amount of $177,000 as representing gain on the sale of Treasury notes on August 23, 1954. M. Eli Livingstone, proprietor of Livingstone & Company, and Samuel Livingstone, president of Cushing Investment Corporation, are brothers. In 1952 and 1953 Samuel Livingstone was also president of Seaboard Investment Corp. Both corporations had the same address in Boston. Cushing was a Massachusetts corporation, incorporated in 1952 and operated on the basis of a fiscal year ending January 31. Its principal business activity was described in its income tax returns as "Finance." In the balance sheet attached to its first income tax return, Cushing showed no assets and no liabilities at February 1, 1952, the beginning of its first year of operations. Its balance sheets at January 31, 1953 and 1954, were as follows: ASSETS
Jan. 31, 1953
Jan. 31, 1954
Cash
$ 1,402.56
$ 34.97
Notes and accounts receivable
$59,929,758.83
58,160,545.54
Less: Reserve for bad debts
(or losses)
693,906.25
59,235,852.58
Other Assets: Accrued items
525,748.10
180,225.69
Organization expense
51.10
51.10
Total Assets
$59,763,054.34
$58,340,857.30
LIABILITIES
Accounts payable
$ 364,322.11
$ 50.00
Other Liabilities - Short Sales
59,465,571.33
58,457,276.50
Capital Stock: Common stock - 60 shares
600.00
600.00
Earned surplus and undivided profits
(67,439.10)
(117,069.20)
$59,763,054.34
$58,340,857.30
*57 The records of Cushing which were submitted in evidence indicate that Cushing had similar transactions with 9 other individuals over the period from February 21, 1952 to June 11, 1952, resulting in initial notes receivable from all individuals aggregating $59,451,946.33. It does not appear from such records that any other transactions of the same nature were entered into after June 11, 1952. Such records purport to show cash receipts of interest payments during the fiscal year ended January 31, 1954, in the aggregate amount of $241,378.22, including $100,000 from petitioner. In its income tax return for its first fiscal year, ended January 31, 1953, Cushing reported the amount of $626,972.15 as "Gross profit where inventories are not an incomedetermining factor." It reported a net loss of $67,439.10 after claiming deductions aggregating $694,411.25 which consisted of items identified on the return as losses, $693,906.25, legal and audit, $500, and office expense, $5.00. In its return for the fiscal year ended January 31, 1954, Cushing reported gross income of $241,378.22 under the caption "Interest on loans, notes, mortgages, bonds, bank deposits, etc." It reported a net loss in *58 the amount of $49,630.10 after claiming deductions aggregating $291,008.32 which consisted of the items of director's fees, $1,000, general expense, $5.50, bank charges, $2.81, and losses, $290,000.01. In the joint income tax return filed by the petitioners for the fiscal year ended August 31, 1952, they reported adjusted gross income in the amount of $294,449.47, deductions in the amount of $289,298.01, and net income in the amount of $5,151.46. Among the deductions claimed was the amount of $184,729.63 as interest paid to Cushing. Reported income did not include any interest on Treasury notes. No interest coupons on such notes matured between May 15 and August 31, 1952. In the joint return filed for the fiscal year ended August 31, 1953, they reported adjusted gross income in the amount of $214,546.12, deductions in the amount of $194,889.86, and net income in the amount of $19,656.26. Among the items of income reported was the amount of $137,393.13 as interest from "U.S. Bonds." [6] Among the deductions claimed was the amount of $100,000 as interest paid to Cushing. *59 In determining the deficiencies the respondent disallowed the claimed deductions for interest paid to Cushing in the fiscal years 1952 and 1953 in the amounts of $184,729.63 and $100,000, respectively. He made no adjustment in the income items reported. The petitioner did not pay any interest on indebtedness to Cushing in the fiscal years ended August 31, 1952 and 1953. Opinion The essential facts in this case closely parallel those in the case of Eli D. Goodstein, 30 T.C. - (Aug. 28, 1958), wherein, as here, the principal issue was whether claimed interest payments were allowable deductions from gross income. In both cases the transaction was handled by the same broker, Livingstone. Both followed the same pattern through the purchase by the broker of U.S. Treasury notes, allegedly for the taxpayer; the payment to the broker of a relatively small amount; the giving of a note by the taxpayer for the balance to a "finance" company which had no funds to loan but which purportedly acquired funds through a short sale of Treasury notes, in connection with which the purchased Treasury notes were used to make delivery; and the issuance of checks to the finance company in purported *60 payment of interest, with a concurrent "borrowing back" of equivalent amounts from the finance company. The parties make essentially the same arguments here as they made in the Goodstein case, the respondent taking the position tha the transaction lacked substance and should be disregarded for tax purposes and the petitioner contending that the transaction was what it purported to be, namely, a purchase of Treasury notes as a desirable investment with borrowed money and the payment of interest to his creditor. From a consideration of the whole record in the instant case, we are forced to the conclusion, as we were in the Goodstein case, that all the steps taken were pursuant to a preconceived plan which lacked substance and which was entered into solely to form the basis for a claimed tax benefit, that the petitioner did not intend to and did not in fact purchase the Treasury notes, and that petitioner incurred no indebtedness to Cushing or any liability to pay interest. Although the petitioner did issue his checks to Cushing in a total amount of $284,729.63, purportedly in payment of interest, these payments likewise lacked substance in that the petitioner received back from Cushing *61 equivalent amounts at the same time, purportedly as loans. As stated, we believe the transaction in its entirety lacks substance. In any event, the petitioner, upon whom rests the burden of proof, has not shown that it did have substance and that he incurred liability for and paid interest upon indebtedness. One aspect of the instant case gives the surface appearance of differing somewhat from the Goodstein case. The petitioner testified at the hearing that in his income tax return for the fiscal year 1954, he reported an amount of "approximately $177,000" as gain realized on the sale of the Treasury notes. Of course, there was no sale of the same Treasury notes, since they had been immediately disposed of. There is no evidence to show whether Cushing actually acquired an equivalent amount of such Treasury notes in 1954 and sold them. Be this as it may, it is not determinative of the issue here, nor is it determinative that the petitioner did report and pay tax on a calculated gain in 1954. Such action on the petitioner's part would necessarily follow in order to give consistency to his concept of the transaction. Having deducted interest on a purported loan to purchase bonds, consistency *62 would require that he account tax-wise for any gain calculated upon the conclusion of the entire transaction. We do not have the year 1954 before us and may not consider his tax liability for that year. Even if the transaction were considered as one of substance, the petitioner would not be entitled to deductions for interest in the fiscal years 1952 and 1953. The petitioner reported his income on the cash method of accounting. In view of the concurrent "borrowing back" of amounts equivalent to the amounts purportedly paid as interest, there was in actuality no payment made by the petitioner which is a prerequisite to a deduction by a cash basistaxpayer. At best there would be no more than a giving of notes to establish liability for interest. This would not constitute payment. See Eli D. Goodstein, supra, and cases cited therein. We hold that the respondent did not err in disallowing the claimed interest deductions. Here, as in the Goodstein case, the petitioner makes an alternative claim for a loss deduction in the fiscal year 1952 for a part of the amount paid to Livingstone in May 1952. Theamount claimed is $15,868.03, being the difference between the $16,500 paid to Livingstone *63 at the inception of the transaction and the balance of $631.97 remaining after applying the alleged sale price of the Treasury notes in 1954 to the amount of his purported liability to Cushing. We concluded in the Goodstein case that the initial payment to Livingstone did not constitute a down payment on a purchase of Treasury notes, but was a fee paid to Livingstone for his services in carrying out the plan. We held that since there was no purchase or intent to purchase, the transaction was not one entered into for profit within the meaning of the statute and that it did not give rise to a loss deduction. That holding governs the claim to a loss deduction in this case. The petitioner is not entitled to a loss deduction for the fiscal year 1952. Here also, as in the Goodstein case, the petitioner alternatively claims the right to exclude from income for the fiscal year 1953 the amount reported as interest income from the Treasury notes. Following the Goodstein case, we hold that the petitioner is entitled to exclude such interest in the amount claimed in the petition, namely, $137,201.09. Decision will be entered under Rule 50. Footnotes
1. The serial numbers were: 3362, 1512, 709, 3503, 3396, 1790, 2749, 2750, 1845 for $1,000,000 each; 37438/57 for $100,000 each.↩
2. This amount appears to be made up of the original note in the amount of $10,903,017.66, plus the second note in the amount of $184,750. ↩
3. This amount appears to consist of the $11,087,767.66 shown in the prior balance sheet less an amount of $165,000 representing coupon interest on Treasury notes.↩
4. There is no specific explanation of the figure of $11,140,305.53. However, the high and low prices of these Treasury notes during August 1954 were 100 20/32 and 100 15/32, respectively. In addition, interest on such notes would have accrued from March 15, 1954. ↩
5. The parties have stipulated that (a) records liability from Livingstone to Cushing arising from delivery of Sonnabend collateral by Cushing to Livingstone, and that this item is offset by another entry under the same date in the form of a liability from Cushing to Livingstone for repurchase of similar Treasury notes, at the same price, to consummate Cushing short sale; that (b) records a Cushing expense of operation; that (c) records a liability from Cushing to Livingstone representing cash due to Sonnabend and to be paid to him by Livingstone; and that (d) records satisfaction of Sonnabend indebtedness to Cushing on collateral note, thereby closing the Sonnabend loan (or note) receivable account.↩
6. This apparently includes the sum of $137,201.09 as representing coupon interest of $165,000 on the $11,000,000 Treasury notes which coupons became due on September 15, 1952 and March 15, 1953, less the $27,798.91 interest accrued at May 15, 1952. The difference between such net coupon interest in the amount of $137,201.09 and the reported amount of $137,393.13 is not explained.↩